IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CHEVRON INTELLECTUAL PROPERTY, L.L.C. | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO: 7:08-CV-98-O |
| | § | |
| RICHARD J. ALLEN a/k/a DICK ALLEN, INDIVIDUALLY, d/b/a ALLEN'S TEXACO AND EXPRESS LUBE and d/b/a ALLEN'S TEX&CO. AND EXPRESS LUBE, | § § § § § § § | |
| Defendant, | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment ("Pl.'s Mot.") (Doc. # 10), filed April 24, 2009, asking this court for default judgment and permanent injunctive relief. Having reviewed this motion and the applicable law, the Court finds that Plaintiff's Motion for Default Judgment and Permanent Injunction should be and hereby is **GRANTED**.

**I.  Background**

On June 26, 2008, Plaintiff Chevron Intellectual Property L.L.C., initiated this action against Defendant Richard J. Allen a/k/a Dick Allen, individually, d/b/a Allen's Texaco and Express Lube and d/b/a Allen's Tex&Co. and Express Lube ("Defendant"), alleging federal claims under the Lanham Act and state claims, including trademark infringement, trade dress infringement, trademark dilution, unfair competition and unjust enrichment. *See generally* Complaint.  In particular, Plaintiff alleges that Defendant is infringing its trademark and trade dress rights through the unauthorized use of Plaintiff's trademarks and trade dress at Defendant's

1

service station. Pl's Mot. at 2-3.  Plaintiff alleges that Defendant's use of its marks and trade dress, including, but not limited to the TEXACO and "Star T" design marks and trade dress marks is deceiving the consuming public. Compl. at 7.

In 2001, Plaintiff merged with the Texaco Corporation, resulting in Plaintiff's ownership of all Texaco trademarks and trade dress. Pl's Mot. at 1-2.  In essence, Plaintiff owns all word marks, logos, pumps, canopy and building color designs and patterns that identify Texaco facilities. Pl's Mot. at 1-2.  After the 2001 merger, Plaintiff continued to license Texaco trademarks and trade dress to Defendant. Pl's Mot. at 2.

In June 2006, Plaintiff's licencing agreement with Defendant terminated. Pl's Mot. at 2-3. At that time, Defendant was given opportunities to continue as a licencee or to remove all of Plaintiff's trademarks and trade dress from its service station. *Id*.  On May 16, 2007, Plaintiff sent a cease-and-desist letter to Defendant. Pl's Mot. at 3.  Despite these efforts, Plaintiff alleges that Defendant continues to conduct business under marks and trade dress identical or deceptively similar to those owned by the Plaintiff.  *Id*.

In December 2007, Plaintiff learned that Defendant had altered the Texaco marks at his service station. *Id*.  For example, Plaintiff alleges that Defendant replaced the "A" in "TEXACO" with a red "&" symbol, removed the "T" out of the so-called "Star T" design, and was doing business as Allen's "TEX&CO." *Id*.  Plaintiff alleges that these changes are merely inconsequential modifications that nonetheless infringe Plaintiff's trademarks and trade dress rights. *Id*.  Furthermore, Plaintiff contends these modifications demonstrate Defendant acted intentionally, and in bad faith in failing to comply with the cease-and-desist letter. *Id*.

The Court issued a summons on June 26, 2008, as to Defendant Richard J. Allen. (Doc. #

2

2), and he was properly served with the summons on July 3, 2008.  On July 10, 2008, the summons was returned to the Court as executed. Doc. # 5.  Defendant did not file an answer or any other responsive pleading within twenty (20) days of July 3, 2008, the date of service, as required by FED. R. CIV. P. 12(a)(1)(A)(i).  Plaintiff filed a motion for the Clerk's entry of Default against Defendant (Doc. # 6) on October 16, 2008, and the Clerk entered default (Doc. # 7) on December 15, 2008.  In the present motion, Plaintiff seeks default judgement granting permanent injunctive relief and attorney's fees as plead in its Complaint. Pl's Mot. at 6-9; Compl. at 1, 18-19.  Defendant did not respond to Plaintiff's Motion for Default Judgment.

Because  the Clerk has found Defendant in default, the Courts determination of whether entry of a default judgment should follow is ripe for consideration.  Once the procedural prerequisites for entering default judgment are met, the Court may consider request for a permanent injunction and reasonable attorney's fees.

## II.     Legal Standard

### A. Entry of Default Judgment

The Fifth Circuit has held that "default judgments are a drastic remedy not favored by the Federal Rules and resorted to by the courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).  Even if a defendant is technically in default, "[a] party is not entitled to a default judgment as a matter of right." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  Instead, a default judgment is committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).  The exercise of discretion in deciding the matter is given deference upon review. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

The Fifth Circuit looks to the following six factors when considering whether to enter a default judgment: (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a default judgment; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if the court would think itself obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (holding that a district court did not abuse its discretion when denying a motion for default judgment when these factors weighed against granting the motion).

As of the date of this order, Defendant has not offered any evidence that his failure to appear is the product of "a good faith mistake or excuse." *Id.* Defendant ignored the Complaint by failing to respond for over a year, which has substantially prejudiced the Plaintiff's interest in resolving its claims against the Defendant. *See U.S. v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Because the Defendant has had ample time to appear in this action, a default judgment would not be unusually harsh. *See id.* No material issues of fact have been placed in dispute due to the Defendant's failure to respond to the Complaint. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). The grounds for default judgment are clearly established, as the Defendant was properly served, but failed to answer or otherwise appear in this action for over a year. Pl.'s Mot. 3-5. Finally, because Plaintiff's attempts to resolve this matter by offering to permit the Defendant to continue as licensee, and subsequently sending

4

Defendant a cease-and-desist letter were unsuccessful, the Court finds no reason why it would be obligated to set aside the default on Defendant's motion. Pl.'s Mot. 2-3.  Accordingly, the Court is of the opinion that the procedural prerequisites to entering default judgment are satisfied.

### B. Remedies

Next, the Court determines whether it would be appropriate to award Plaintiff the remedies requested in its Motion upon the entry of default judgment.  In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54 (c).  Therefore, the relief prayed for in a Plaintiff's Complaint limits the relief available on default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975).  Because the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, the Court will now determine whether the relief requested is appropriate based on the governing law.

#### 1. Permanent Injunction

Plaintiff first request a permanent injunction enjoining Defendant from infringing Plaintiff's trademarks and trade dress, in both its Motion and Complaint. Pl.'s Mot. 6-7; Compl. 18.  Thus, the Court next considers whether a permanent injunction is an appropriate remedy in this case. Under 15 U.S.C. § 1116(a), this Court has the power to grant a permanent injunction for a violation of the Lanham Act.  A permanent injunction is appropriate if a plaintiff can prove: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (citations omitted).  Courts have acknowledged

that default against a defendant is tantamount to actual success on the merits. *See*, *e.g.*, *Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006).

Here, the Court finds that Plaintiff's request for a permanent injunction is deserved. Defendant's default constitutes actual success on the merits. *Id.* Further, Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendant. *See*, *e.g.*, *W.B. Music Corp. v. Big Daddy's Entm't, Inc.*, No. EP-05-CA-267-PRM, 2005 WL 2662553, at *3 (W.D. Tex. Oct. 18, 2005). Requiring Defendant to restrain from future infringement will cause him minimal to no harm, and any potential harm caused by requiring him to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted. Finally, an injunction would serve the public interest by promoting compliance with intellectual property law. *See Arista Records, Inc. v. Kabani*, No. 303CV1191-H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004). Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment.

### 2. Attorneys' Fees

Secondly, Plaintiff requested reasonable attorney's fees in its Complaint as well as its Motion, for Defendant's violations of the Lanham Act. Compl. 18-19; Pl.'s Mot. 7-8. This Court should award reasonable attorney's fees if such relief would be appropriate under the Lanham Act. The Lanham Act gives this Court the discretion to award attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The Fifth Circuit has acknowledged that "the exceptional case is one in which the defendant's trademark infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992).

Here, the Court finds that Plaintiff should be awarded reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a).  Defendant's trademark infringement was willful and deliberate.  Defendant was given opportunities to continue as a licensee or to remove Plaintiff's trademarks and trade dress.  Furthermore, Defendant was sent a cease-and-desist letter on May 16, 2007.  Despite these actions taken by the Plaintiff, Defendant has continued his unauthorized use of Plaintiff's trademarks and trade dress.  Additionally, an award of reasonable attorney's fees is appropriate due to the fact that Defendant has completely disregarded this litigation by failing to appear. *See*, *e.g.*, *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003) (noting that "a case may be deemed "exceptional," and merit an award of attorney's fees under the Lanham Act, when Defendant disregards the proceedings and does not appear").

The Fifth Circuit uses the "lodestar" method to calculate reasonable attorney's fees. *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar fee is calculated by multiplying the number of hours spent on the matter by a reasonable hourly rate for such work in the community. *Id.*  Once the calculation is made the court may raise or lower the lodestar amount based on the weight of twelve factors set forth in *Johnson v. Ga. Highway Express,* 488 F.2d 714, 717-19 (5th Cir. 1974).  The lodestar award may not be adjusted if the *Johnson* factors were already considered when determining the original lodestar amount. *Id.*

Under this method, the Court may not rule based on a default judgment alone.  The Fifth Circuit requires that the claimants establish a reasonable hourly rate and the total numbers of hours expended on this litigation.  For example, an affidavit from a responsible attorney may set out these details sufficiently. *See, e.g., Tollett v. City of Kemah*, 285 F.3d 357, 367-69 (5th Cir.

2002).

      Plaintiff has yet to provide the Court with the information needed to calculate reasonable attorney's fees.  Thus, Plaintiff is ordered to produce an affidavit providing the Court with the information necessary to calculate such reasonable attorney's fees under the lodestar method.

      Accordingly, the Court is of the opinion that Plaintiff's requests for a permanent injunction and reasonable attorney's fees, are reasonable and should be, and are hereby, granted.

### **III**    **Conclusion**

      1. Based on the foregoing analysis of facts and legal principles, the Court concludes that the Plaintiff's Motion for Default Judgment requesting a permanent injunction should be and hereby is **GRANTED**.  Accordingly, the Court orders as follows:

      a.    The Defendant and his owners, principals, agents, employees, and all persons in active concert with him, or any of them, are enjoined from operating the facility located at 403 West Wise St., Bowie, Texas 76230 ("Facility") using Chevron's Texaco marks and trade dress or any similar variations thereof (including, but not limited to, all exterior and interior signage, banners and labeling, trade names, and advertising), unless they obtain a license with Chevron to do so.

      b.    The Defendant and his owners, principals, agents, employees, and all persons in active concert with him, or any of them, are enjoined from displaying Chevron's Texaco marks and trade dress or any similar variations thereof (including, but not limited to, all exterior and interior signage, banners and labeling, trade names, and advertising) on the property located at the Facility,

      whether or not the Facility is operating, unless they obtain a license with Chevron to do so.

      c.      The Defendant is ordered to turn over to Plaintiff's attorney all signs, labels, packages, wrappers and advertisements bearing Chevron's Texaco marks and trade dress, or any similar variations thereof.

2. Additionally, based on the foregoing analysis of facts and legal principles, the Court concludes that the Plaintiff's request for attorney's fees should be and hereby is **GRANTED**. In order to enter that judgment, the Court orders Plaintiff to submit an affidavit from a responsible attorney setting out the details that establish a reasonable calculation of attorney's fees by September 4, 2009, or such other evidence establishing proof under the Fifth Circuit's standards.

**SO ORDERED** on this 24th day of August, 2009.

                                                        _____
                                                        **Reed O'Connor**
                                                    **UNITED STATES DISTRICT JUDGE**